THE STATE EX REL. HAYBURN *v.* KIEFER, SHERIFF.

[Cite as *State ex rel. Hayburn v. Kiefer* (1993), 68 Ohio St.3d 132.]

(No. 93–23—Submitted December 7, 1993—Decided December 16, 1993.)

*Donald J. McTigue* and *Mark T. Musick*, for relator.

*James R. Kingsley* and *John H. Farthing*, for respondent.

*Per Curiam.* For a writ of quo warranto to issue, relator must show that he is entitled to the office of sheriff and that respondent is holding the office unlawfully. R.C. 2733.06; *State ex rel. Wilson v. Gulvas* (1992), 63 Ohio St.3d 600, 589 N.E.2d 1327; *State ex rel. Delph v. Barr* (1989), 44 Ohio St.3d 77, 541 N.E.2d 59, syllabus. Relator claims (1) that respondent failed to qualify as sheriff under R.C. 311.01(B)(8) (candidate or sheriff must have held, within three years prior to the "qualification date," a "valid certificate of training as a law enforcement officer compensated with governmental funds"), and (2) that relator is authorized to retain the office under R.C. 3.01 ("A person holding an office of public trust shall continue therein until his successor is elected or appointed and qualified, unless otherwise provided in the constitution or laws of this state.").

Respondent defends his qualifications and further argues (1) that relator is not qualified to hold the office of sheriff, (2) that a writ of quo warranto should be denied due to a "procedural bar," waiver, estoppel or laches, and a conclusive presumption based on the issuance of a certificate of election, (3) that there is an

unconstitutional delegation of legislative authority concerning R.C. 311.01(B), and (4) that R.C. 311.01(B) denies to respondent due process and equal protection of the law under various theories.

For the reasons that follow, we hold that respondent possesses a valid certificate of training as required by R.C. 311.01(B)(8) and, therefore, has qualified as sheriff. Accordingly, we deny the writ and have no cause to reach respondent's other arguments, particularly those raising constitutional issues. *State ex rel. Hofstetter v. Kronk* (1969), 20 Ohio St.2d 117, 119, 49 O.O.2d 440, 441, 254 N.E.2d 15, 17 (constitutional questions are not to be decided unless "absolutely necessary").

To decide whether respondent meets the requirements of R.C. 311.01(B)(8), we must determine what it means to have held, "within three years prior to the qualification date, a valid certificate of training as a law enforcement officer compensated with governmental funds." "Qualification date" is defined in R.C. 311.01(H)(1), and in this case means the last day on which respondent could file a declaration of candidacy, which the parties agree was February 20, 1992. Thus, the statute first requires that respondent have held a valid certificate of training within three years prior to February 20, 1992.

"Valid" is not defined for the purpose of R.C. 311.01, and so we employ the ordinary meaning of this term, which is "having legal force." Webster's New World Dictionary (2 College Ed.1982) 1568. "Certificate of training" is also undefined. "Law enforcement officer" is defined in R.C. 2901.01(K), and extends not only to officers normally regarded as law enforcement officers, such as municipal police officers, sheriffs, deputy sheriffs and constables, but also to persons such as members of a militia when engaged in peacekeeping functions, persons with special or limited police powers, and prosecutors and assistant prosecutors.

"Compensated by governmental funds" is not defined, but has been interpreted by the Ohio Attorney General. In 1988 Ohio Atty.Gen.Ops. No. 48, he concluded that this phrase modified the immediately preceding phase "law enforcement officer" and thus meant only a position normally compensated by government, *i.e.,* not a private position such as a security guard, and did not require that compensation be paid during the three-year period. We agree with this interpretation.

When these terms are taken together, R.C. 311.01(B)(8) becomes essentially a training requirement. It demands that respondent have held a training certificate, of some kind not specified in the statute, for duties as a public law enforcement officer, within the generous definition in R.C. 2901.01(K), at some point during the three years immediately prior to February 20, 1992, and at which time the certificate had legal efficacy or force. The training requirement is

thus broadly inclusive and must be so construed. In *State ex rel. Schenck v. Shattuck* (1982), 1 Ohio St.3d 272, 274, 1 OBR 382, 383, 439 N.E.2d 891, 893, we said:

"Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified." Approved and followed in *State ex rel. Altiere v. Trumbull Cty. Bd. of Elections* (1992), 65 Ohio St.3d 164, 165, 602 N.E.2d 613, 614.

Though broadly inclusive, R.C. 311.01(B)(8) is yet vague as to what it means by "certificate of training as a law enforcement officer." Relator and respondent seem to assume that the "certificate of training" of R.C. 311.01(B)(8) equates to the peace officer basic training certificate required by R.C. 109.77. The parties apparently agree that respondent received such a certificate from the Ohio Peace Officer Training Council on March 14, 1978, during his tenure on the Jackson Municipal Police Department. Relator, however, submits that respondent's certificate is no longer valid because he resigned his position as a detective in the Jackson Police Department on August 29, 1984 and has not been employed as a law enforcement officer since. If true, this lapse of employment would invalidate respondent's basic training certificate for the purpose of R.C. 311.01(B)(8) by operation of Ohio Adm.Code 109:2–1–12(E), which states:

"All persons who have not been employed as a peace officer for more than four years shall, upon re-entry into employment as a peace officer, complete a basic course."

Thus, whether respondent was an auxiliary police officer from 1984 through 1992 has significance as to whether his peace officer basic training certificate was valid during the three target years prior to February 20, 1992. Respondent defends his training certificate with evidence intended to prove that he was an auxiliary officer for Jackson from the time of his resignation in 1984 through 1992. He also presents evidence showing his other certificates of training, which include:

1. Criminal justice investigation certificate for one hundred sixty hours' training from the Ohio Peace Officer Training Council, September 10 through October 5, 1979.

2. Forty hours of training from the council in investigative hypnosis, October 22 through 26, 1979.

3. Forty hours of training from the council in managing criminal investigations, May 5 through 9, 1980.

4. Training from the council on death investigations, July 7 through 9, 1980.

5. Forty hours training from the council on arson investigation, November 17 through 21, 1980.

6. Eighty hours training from the council on instructional skills for training officers January 26 through February 6, 1981.

7. Training from the council on intermediate investigative hypnosis, November 9 and 10, 1981.

8. Sixteen hours of training from the council on marijuana identification, November 12 and 13, 1981.

9. Forty hours training in homicide investigation from the Hocking Technical College, March 22 through 26, 1982.

10. Training in defensive skills from Nutshell Training Concepts, Columbus, Ohio, June 24, 1982.

11. Training in the terminal operation from the Steering Committee of the Ohio Law Enforcement Automated Data System, December 9, 1982.

12. Forty hours of homicide investigation from Hocking Technical College, March 20 through 25, 1983.

13. Training in financial investigative techniques from the IRS, May 21 through 22, 1984.

No one disputes that these certificates are currently "valid" within three years of February 20, 1992. Apparently, they have no expiration date. The question therefore becomes whether the R.C. 311.01(B)(8) requirement for a valid certificate of training refers only to the peace officer basic training certificate, or also could include other training certificates earned by respondent, issued by the Ohio Peace Officer Training Council or others.

As mentioned, 1988 Ohio Atty.Gen.Opinion No. 48 concludes that a " 'valid certificate of training as a law enforcement officer' is not limited to a peace officer [basic training] certificate earned pursuant to R.C. 109.77." The Attorney General cited evidence for this conclusion within R.C. 311.01, comparing R.C. 311.01(D), which refers to a course offered by the Ohio Peace Officer Training Council, with R.C. 311.01(B)(8), which is not so specific. The contrast demonstrates that the General Assembly was aware of courses offered by the council, but consciously decided not to restrict the training certificate of R.C. 311.01(B)(8) to a specific course offered by the council.

We accept the Attorney General's interpretation. Moreover, in keeping with *Schenck's* admonition to give words limiting the right to hold office a liberal construction in favor of the person seeking to hold office, we construe R.C. 311.01(B)(8) to mean that a sheriff or candidate for sheriff must have received some training for duties as a public law enforcement officer, which training is memorialized by a certificate that was valid during at least some part of the three

years preceding the applicable qualification date. The training need not necessarily be peace officer basic training because the General Assembly has not specified this requirement.

Applying our construction to this case, we hold that respondent's training certificates, showing that he received various kinds of ancillary law enforcement training between 1979 and 1984, and remaining unrevoked and unexpired, satisfy R.C. 311.01(B)(8), regardless of whether his basic training certificate was valid. Respondent has thus qualified as sheriff and is not holding that office unlawfully. Therefore, we deny the writ of quo warranto.

*Writ denied.*

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.