OPINION
{¶ 1} Defendant-appellant, Denmark Township ("appellant"), appeals from the judgment of the Ashtabula Court of Common Pleas reversing the decision of the Denmark Township Zoning Board of Appeals. The Zoning Board of Appeals had determined that plaintiff-appellee, Aluminum Smelting Refining Company, Inc. ("Aluminum Smelting"), had voluntarily discontinued the non-conforming use of a captive landfill, which it owned and operated.
 {¶ 2} On August 11, 2000, the Denmark Township Zoning Inspector determined that the non-conforming use status of Aluminum Smelting's landfill had been abandoned due to Aluminum Smelting's voluntary discontinuance of the use of the site as a captive landfill for a period of time exceeding two years. On August 29, 2000, Aluminum Smelting appealed the decision of the Denmark Township Zoning Inspector to the Board of Zoning Appeals, arguing the captive landfill was a non-conforming use, pre-dating the zoning resolution of 1982. Aluminum Smelting contended it had not voluntarily abandoned its use of the property because it maintains the captive landfill and has a current Solid Waste License from the Ashtabula County Health Department and the Ohio Environmental Protection Agency ("Ohio EPA"). Aluminum Smelting files an annual operational report with the Ohio EPA and the landfill is periodically inspected by the Ashtabula County Health Department and the Ohio EPA. Aluminum Smelting must continually monitor the groundwater quality and employs two full-time employees for maintenance work.
 {¶ 3} On September 26, 2000, a public meeting was held on the matter before the Denmark Township Zoning Board of Appeals. The Ashtabula County Health Commissioner testified the Health Department is involved in the regulation of the Aluminum Smelting captive landfill. He described the site as an industrial, captive landfill facility that is owned by the generator of the waste that is deposited at the facility. The Health Commissioner identified the annual operation reports from the facility for the years 1996 through 1999, reports which Aluminum Smelting must complete. For the years in question, no new waste was taken in or disposed of at the facility. Aluminum Smelting had not been prohibited from depositing additional waste generated by Aluminum Smelting at the landfill. The Health Commissioner estimated no waste had been deposited at the landfill in seven or eight years. The Health Commissioner acknowledged his department regularly inspected the property, that Aluminum Smelting applied for annual solid waste licenses, and filed an annual solid waste report with the Ohio EPA. The Health Commissioner was aware Aluminum Smelting had sold the two facilities from which the landfill was designed to accept waste.
 {¶ 4} An Environmental Technical Consultant testified he provided environmental ground water monitoring for Aluminum Smelting at the captive landfill as required by the Ohio EPA. The Site Manager for the landfill testified he is employed on a full-time basis and is responsible for maintenance. He stated the captive landfill was not operated as if it were abandoned. At the close of the hearing, the Zoning Board of Appeals voted to deny the appeal. In its findings, the Zoning Board of Appeals found the evidence showed no dumping or disposal of waste had taken place at the landfill since 1993 and that the site had been inactive for more than two years.
 {¶ 5} On October 31, 2000, Aluminum Smelting appealed the decision of the Zoning Board of Appeals to the Ashtabula County Court of Common Pleas. The parties stipulated that Aluminum Smelting's operation of the captive landfill was a non-conforming use because landfills had been prohibited in Denmark Township since 1982. Aluminum Smelting only disposed of its aluminum dross in the landfill, which is a non-toxic by-product of the smelting of aluminum. Although a captive waste landfill, such as the one at issue here, is owned by the generator of the waste disposed of at the site, Aluminum Smelting no longer owns any manufacturing facilities which produce aluminum dross. The landfill had not received any new waste material for approximately seven years and is considered "inactive." Aluminum Smelting continues to file annual solid waste reports with the Ohio EPA and the County Health Department, performs groundwater monitoring, maintains the landfill cells and cover, and has a proposed closure plan, as required by the Ohio EPA. Aluminum Smelting has discussed alternative sources and forms of waste and re-designation or change of the permit status with the Ohio EPA. Aluminum Smelting has sought a purchaser for the captive landfill.
 {¶ 6} In its brief filed with the Ashtabula County Court of Common Pleas, Aluminum Smelting argued the Zoning Board of Appeals did not meet its burden in showing that Aluminum Smelting manifested an intent to voluntarily discontinue the use of the captive landfill. Aluminum Smelting also claimed the zoning resolution prohibiting the continued use of the landfill conflicted with the Ohio EPA's regulatory authority over the maintenance and operation of landfills within the state. Lastly, Aluminum Smelting asserted that the decision amounted to an unconstitutional taking of its property without due process of law.
 {¶ 7} In its brief filed with the Ashtabula Court of Common Pleas, appellant argued that Aluminum Smelting abandoned its non-conforming use when it ceased disposing of waste for approximately seven years. Aluminum Smelting's sale of its manufacturing facilities also demonstrated its voluntary abandonment because it was a captive industrial waste facility. Further, the landfill was on inactive status.
 {¶ 8} On June 6, 2001, the Ashtabula County Court of Common Pleas issued its judgment entry. The court stated that Aluminum Smelting had maintained a continuous and current operation at the landfill although no waste material had been disposed of there since 1993. The court determined that, to abandon the landfill, Aluminum Smelting would have to submit a final closure plan to the Ohio EPA. The court further concluded that the Zoning Board of Appeals had not met its burden of establishing that Aluminum Smelting discontinued its non-conforming use of the property. The court also ruled that the decision of the Zoning Board of Appeals conflicted with the Ohio EPA's regulatory authority over the landfill. The court determined that Aluminum Smelting had waived its constitutional argument regarding the taking of the property without due process of law.
 {¶ 9} On appeal, appellant raises the following assignments of error:
 {¶ 10} "[1.] The trial court's finding that ASR has not voluntarily discontinued the nonconforming use of its property as a captive industrial waste landfill is not supported by a preponderance of reliable, probative and substantial evidence on the whole record.
 {¶ 11} "[2.] The trial court erred as a matter of law, prejudicial to appellant, by holding that the BZA's decision prohibiting continued use of the ASR property as a landfill is in conflict with the state's regulatory authority of the landfill."
 {¶ 12} In its first assignment of error, appellant contends the trial court's finding that Aluminum Smelting had not voluntarily discontinued its use of the property as a captive industrial landfill for more than two years is not supported by a preponderance of the evidence. Appellant argues that it met its burden of proof of showing that Aluminum Smelting discontinued its non-conforming use of the captive landfill when it stopped disposing of its own industrial waste at the facility for a seven-year period. Appellant asserts that Aluminum Smelting's use of the property to essentially store waste did not comply with the definition of a landfill as found in a Denmark Township Zoning Resolution. That resolution states a landfill is land used to dump or dispose of waste. Appellant asserts that, when Aluminum Smelting ceased dumping waste at the facility, the property was no longer a landfill as defined by Denmark Township. Further, appellant points out that Aluminum Smelting could no longer use the property as a captive landfill because it no longer generated industrial waste. Appellant states that any effort by Aluminum Smelting to re-designate the property from a captive landfill to a general landfill changes the non-conforming use status of the property and any such enlarged use would not be permitted under the current zoning resolution.
 {¶ 13} In an administrative appeal, a court of common pleas considers the whole record, including any new or additional evidence, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence. Henley v.Youngstown Bd. of Zoning Appeals, 90 Ohio St.3d 142, 2000-Ohio-493. An appellate court, reviewing the judgment of the court of common pleas, only considers questions of law and does not weigh the evidence. Id. An appellate court will not substitute its judgment for that of the administrative agency or the common pleas court, unless the court finds an error of law. Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34. Within the ambit of "questions of law" includes whether the common pleas court abused its discretion. Henley, supra, at 148. Abuse of discretion connotes more than an error of law or of judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Rimesv. Ohio Dept. of Human Services (Jan. 26, 2001), 11th Dist. No. 99-L-068, 2001 Ohio App. LEXIS 254.
 {¶ 14} A nonconforming use is a lawful use of property in existence at the time of enactment of a zoning resolution which does not conform to the regulations under the new resolution. Kettering v. LamarOutdoor Advertising, Inc. (1987), 38 Ohio App.3d 16, 17. A nonconforming use is allowed to exist because of the constitutional prohibitions against immediate termination of the use. Id. at 18. However, nonconforming uses are not favorites of the law. Id. See also, Ghindiav. Monus (June 14, 1996), 11th Dist. No. 95-T-5326, 1996 Ohio App. LEXIS 2465, at 4. Therefore, nonconforming uses "may be regulated, and even girded to the point that they wither and die." Columbus v. Union CemeteryAssn. (1976), 45 Ohio St.2d 47, 49. Because of the disfavored status of a nonconforming use, "[t]he denial of the right to resume a nonconforming use after a period of nonuse has been upheld, as well as the denial of the right to extend or enlarge an existing nonconforming use." Akron v.Chapman (1953), 160 Ohio St. 382, 386-387.
 {¶ 15} A person retains the right to continue a specific non-conforming use of his or her property as long as that use is not voluntarily discontinued for a period of two years. R.C. 519.19; Mentorv. Brettrager, 11th Dist. No. 2000-L-050, 2002 Ohio 1955, 2002 Ohio App. LEXIS 1902. The discontinuance of a non-conforming use will be considered to be voluntary only if the property owner intended to abandon the use.Recreational Facilities, Inc. v. Hambden Twp. Bd.of Trustees (June 30, 1995), 11th Dist. No. 93-G-1819, 1995 Ohio App. LEXIS 2804. The party claiming the use was voluntarily discontinued bears the burden, by a preponderance of the evidence, of demonstrating that fact to the trial court. Bd. of Twp. Trustees of Washington Twp. v. Grogoza (Feb. 8, 2001), 5th Dist. No. 00-CA46-2, 2001 Ohio App. LEXIS 595.
 {¶ 16} The record reflects that Aluminum Smelting has not utilized the site to dispose of waste material since 1993. Aluminum Smelting does maintain the captive landfill facility and monitors the landfill in accordance with Ohio EPA regulations. Aluminum Smelting consistently has held annual solid waste licenses for the captive landfill and has been regularly inspected by the Ashtabula County Health Department.
 {¶ 17} The basis of appellant's argument is that its zoning regulation defines a landfill as land used to dump or dispose of waste. The definition does not include the storage of waste. Appellant's argument, as applied to the captive landfill status of Aluminum Smelting's captive landfill, fails because the storage of previously deposited waste at a captive landfill is an ancillary nonconforming use of the act of disposing of or dumping such waste. The owner or operator of a captive landfill cannot merely discontinue the dumping or disposal of waste without providing for the maintenance and monitoring of the waste already stored at the site. Aluminum Smelting has full-time employees at the landfill who maintain the captive facility and have complied with the requirements of the Ohio EPA and the Ashtabula County Health Department in monitoring the waste already at the facility. The ancillary use of the property for ongoing storage of Aluminum Smelting's previously deposited waste is a valid continuation of the nonconforming use. The trial court correctly found that appellant did not meet its burden of establishing that Aluminum Smelting voluntarily discontinued its nonconforming use of the landfill as a captive landfill.
 {¶ 18} The trial court's ruling, however, is overly broad. To the extent that the lower court's decision can be construed as holding that Aluminum Smelting has a right to maintain a general landfill (versus a captive landfill) or has the right to expand the use of the landfill beyond its current storage of Aluminum Smelting's previously deposited waste material, such ruling is unreasonable and is not supported by a preponderance of reliable, probative, and substantial evidence in the record.
 {¶ 19} The evidence in the record demonstrates that (1) Aluminum Smelting used the landfill only as a captive landfill for storage of its waste, and (2) Aluminum Smelting's continuous use of the captive landfill for numerous years has been solely for maintenance and monitoring. Under Ohio law, Aluminum Smelting has the right to maintain the non-conforming use of the property, but only for those specific purposes — (1) a captive landfill for storage of aluminum waste material generated by Aluminum Smelting, and/or (2) the maintenance and monitoring of the waste material previously deposited in the captive landfill by Aluminum Smeling. The trial court's ruling should be modified accordingly.
 {¶ 20} While appellant does not have the authority to prevent these two non-conforming uses, appellant has the authority to regulate new landfill activities or expansion of landfills beyond their status at the time that such zoning is enacted. Simply put, appellant cannot prevent Aluminum Smelting from doing what it has been doing — maintaining a captive landfill, but appellant can adopt reasonable zoning requirements that prevent other, more extensive, landfill uses. Under the circumstances evidenced by the record, Aluminum Smelting has no reasonable expectation that it can expand its use of the landfill beyond its captive landfill status.
 {¶ 21} Aluminum Smelting appears to argue that, because it is in compliance with Ohio EPA regulations regarding maintenance of the landfill, it did not manifest an intent to voluntarily discontinue its use of the captive landfill. The zoning regulation sought to be enforced by appellant and the Ohio EPA's authority over the methods utilized for the operation and maintenance of a landfill are different. The zoning regulation controls the use of the land, while the Ohio EPA regulates the landfill. Therefore, compliance with Ohio EPA requirements will not necessarily result in a finding that political subdivision may not enforce its zoning regulations.
 {¶ 22} Appellant's first assignment of error is well-taken. The case is remanded to the trial court for clarification of the judgment entry regarding the restrictions on Aluminum Smelting's continued use of the property as only a captive landfill without the ability to expand the use of the landfill beyond the established nonconforming use.
 {¶ 23} In its second assignment of error, appellant argues the trial court erred by holding that prohibiting Aluminum Smelting's use of the property as a captive landfill conflicted with the state's regulatory authority of the landfill. Appellant again relies upon its zoning resolution regarding the definition of a landfill to support its contention that no conflict exists between the resolution and Ohio EPA regulations concerning landfills. Appellant asserts that its resolution does not prevent Aluminum Smelting from maintaining its landfill after closure, negating any finding of a conflict by the Ashtabula County Court of Common Pleas.
 {¶ 24} The enactment of a zoning ordinance is an exercise in a municipality's police powers and is not an exercise of local self-government. Therefore, zoning ordinances may not be in conflict with general law. Sheffield v. Rowland, 87 Ohio St.3d 9, 1999 Ohio 217. General laws are statutes setting forth police, sanitary, or similar regulations and not statutes which purport only to grant or limit the legislative powers of a municipality to adopt or enforce police, sanitary or other similar regulations. Such laws operate uniformly throughout the state and prescribe a rule of conduct upon citizens generally. The laws are uniformly applied throughout the state under the same circumstances and conditions. Payphone Assn of Ohio v. Cleveland (2001),146 Ohio App.3d 319. When determining if a municipal ordinance conflicts with a general law of the state, a court is to determine whether the ordinance permits or licenses that which the statute forbids and prohibits or vice versa. Id. Zoning regulations may regulate a non-conforming use so long as the regulation does not deprive the owner of a vested right. Akron v. Chapman (1953), 160 Ohio St. 382. Municipal requirements which alter, impair, or limit the operation of state-licensed waste facilities are not valid. See Fondessy Enterprises,Inc. v. Oregon (1986), 23 Ohio St.3d 213.
 {¶ 25} The captive landfill in question is on inactive status with the Ohio EPA, but is considered to be operational. As stated above, the storage of waste is not included in appellant's definition of a landfill, although such a use of a landfill would be ancillary to the operation of the landfill. The operation and maintenance of a landfill is governed by O.A.C. Chapter 3745. Storage of waste at a landfill falls under the regulation. A landfill must be closed if: (1) the solid waste disposal license is no longer in effect; (2) the owner or operator declares the landfill will cease accepting waste by a certain date; or (3) the landfill has reached its capacity. O.A.C. 3745-29-11(C). Appellant's resolution imposes an additional requirement that the landfillcontinue to dispose of or dump waste. Therefore, the Ohio EPA regulations would permit a landfill to continue to operate even if it is not actively disposing of waste at the site while appellant's resolution would not. In this respect it is in conflict with the state general law to the extent that the resolution language would prohibit the maintenance of any existing captive landfill. However, in this case, this conflict is limited to appellee's maintenance of the landfill at issue as a captive landfill.
 {¶ 26} Appellant also argues that the court found its decision, and not the resolution, to be in conflict with Ohio EPA regulations. However, appellant's entire argument is premised upon its own resolution provision that a landfill must dispose of or dump waste to qualify under appellant's definition of a landfill. Therefore, the lower court's decision was based upon the zoning resolution. Appellant's second assignment of error is overruled.
 {¶ 27} The judgment of the Ashtabula County Court of Common Pleas is reversed and remanded to the lower court for modification consistent with this decision.
WILLIAM M. O'NEILL, P.J., ROBERT A. NADER, J., concur.